CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

3/14/2018

JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
     DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | |
|---|---|
| **JEFFREY W. POLLY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 6:16cv42 |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Jeffrey W. Polly ("Polly") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Polly alleges that the Administrative Law Judge ("ALJ") erred by failing to give proper weight to the opinions of Polly's treating physician, Thomas Hamilton, M.D. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **DENY** Polly's Motion for Summary Judgment (Dkt. No. 13) and **GRANT** the Commissioner's Motion for Summary Judgment (Dkt. No. 18).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Polly failed to demonstrate that he was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability

relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Polly protectively filed for DIB on June 6, 2012, claiming that his disability began on May 25, 2011 due to a crushed right foot and calcaneus fracture, right knee and patella fracture, depression, and arthritis. R. 12, 216–19.[2] The state agency denied Polly's applications at the initial and reconsideration levels of administrative review. R. 52–60, 74–85.[3] On January 13, 2015 ALJ Brian P. Kilbane held a hearing to consider Polly's claims for DIB. R. 29–50. Counsel represented Polly at the hearing, which included testimony from vocational expert Robert Jackson. On January 30, 2015, the ALJ entered his decision analyzing Polly's claims under the familiar five-step process[4] and denying his claim for benefits. R. 12–23. The ALJ found that

---

under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Polly's date last insured was December 31, 2015; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 216; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[3] Polly was born on September 9, 1982, and was 28 years old on his alleged onset date, making him a "younger individual" under the Act. R. 22, 52.

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the

2

Polly was insured at the time of the alleged disability onset and that he suffered from the severe impairments of a comminuted, displaced interarticular calceneus fracture and right patellar fracture status post surgeries, and subtalar arthritis. R. 14. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 16, 21. The ALJ concluded that Polly retained the residual functional capacity ("RFC") to perform a limited range of sedentary work. R. 16. Specifically, the ALJ found that Polly can lift and carry 20 pounds occasionally and 10 pounds frequently, can stand and walk two hours, and sit six hours, in an eight-hour day, can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but can never climb ladders, ropes, or scaffolds, and should avoid concentrated exposure to vibration and hazards. Id. The ALJ determined that Polly was unable to perform his past relevant work as a cabinet maker, pipe layer, automotive detailer, ceramic tile installer, and spray painter, but that he could perform jobs that exist in significant numbers in the national economy, such as small parts assembler, inspector/grader, and telephone order clerk. R. 22–23. Thus, the ALJ concluded that Polly was not disabled. R. 23. Polly appealed the ALJ's decision and the Appeals Council denied his request for review on January 30, 2015. R. 9–11.

## ANALYSIS

Polly alleges that the ALJ erred by failing to give proper weight to the opinions of his treating physician, Dr. Hamilton.

**A. Medical History**

Polly was injured in a motor vehicle accident on May 25, 2011, sustaining a comminuted

---

claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

3

fracture of his right patella and right heel, and a left inferior patellar tendon rupture. R. 320, 325. Polly underwent surgery on May 25, 2011 for his injuries. R. 328. Mark L. Hagy, M.D. performed a second surgery in September 2011, to correct a nonunion of the patella and to remove hardware. R. 430–31. Dr. Hagy noted in December 2011 that Polly was "doing well" three months post-surgery, and that he would "continue to get better." Thus, Dr. Hagy released Polly to "return to work as needed." R. 481.

Polly saw his primary care physician Dr. Hamilton approximately once every one to two months following the May 2011 accident with consistent complaints of right knee and ankle pain. Dr. Hamilton prescribed medication for pain relief and inflammation. Dr. Hamilton noted persistent pain in Polly's right knee and ankle in June 2012, approximately a year following the motor vehicle accident. R. 544. Dr. Hamilton noted in July, September, and November 2012 that Polly favored his right leg when walking, and prescribed Oxycodone and anti-inflammatory medication. R. 544–45. In January 2013, Dr. Hamilton noted improvement in Polly's right ankle pain, and stated Polly was working about twenty hours per week. R. 546. In April 2013, Polly continued to complain of chronic ankle, foot, and knee pain, and he indicated that he did not want to decrease his Oxycodone dose because he was working approximately 40 hours per week. R. 584. In May 2014, Polly reported "fairly good relief" from Oxycodone and that his knee and ankle pain was "essentially the same." R. 581. Dr. Hamilton noted that Polly walked unassisted, but favored his right leg, and had increased pain when he flexed his right knee, and pain on motion in his right ankle, with limited range of motion in his ankle. R. 581–82. Polly also complained about feeling depressed about his situation and Dr. Hamilton diagnosed "situational depression." R. 581.

On May 14, 2014, Dr. Hamilton completed an Assessment of Ability to do Work-Related Activities (Physical) Form, where he indicated that Polly could stand and/or walk 3-4 hours, and sit 4 hours, in a workday due to chronic pain. R. 567–69. Dr. Hamilton also found that Polly would miss more than two days of work a month due to his impairments. R. 569. In January 2015, Dr. Hamilton noted on a check-box form that Polly met Listing 1.02. R. 586.

In December 2014, Polly saw Solono Parekh, M.D., complaining of worsening foot pain. R. 593. X-rays of the right ankle and foot showed moderate subtalar arthrosis, and that the hardware was stable. R. 595. On examination, Polly had antalgic gait and pain on subtalar joint inversion and eversion, but no deformity and normal strength. R. 594. Dr. Parekh noted that Polly was considering surgery for hardware removal and subtalar fusion, but wanted to pursue nonoperative management first. R. 595–96.

### B. Treating Physicians Opinions

Polly argues that the ALJ erred by failing to give controlling weight to the opinions of his treating physician Dr. Hamilton, who found that Polly had significant functional limitations that eliminated his ability to work and that Polly met Listing 1.02. In support, Polly asserts that Dr. Hamilton's opinions are supported by "objective observations, physical examination, and testing." Pl.'s Br. at 6, Dkt. No. 14. The Commissioner asserts that the ALJ properly explained the weight he gave Dr. Hamilton's opinions and that the record does not support Dr. Hamilton's restrictions, including his "speculation" that Polly would miss more than two days of work a month.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in

[the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D.Va. Dec. 29, 2010).

Here, the ALJ appropriately considered these factors and the record in determining the weight to give to the opinions of Dr. Hamilton. The ALJ gave Dr. Hamilton's opinion regarding Polly's functional limitations, as set out in the 2014 Physical Form, little weight, noting that, while Polly fractured his knee and ankle and underwent surgery, his "clinical examinations indicated near normal knee range of motion and only moderate arthritis in his ankle." R. 20, 595. Furthermore, the ALJ noted that Polly had no upper extremity impairments that justified the lifting restrictions placed by Dr. Hamilton. Id. The ALJ emphasized that Dr. Hamilton's proposed limitations are inconsistent with his treatment notes which indicated that Polly could work as a cabinetmaker when using narcotic medications, and that Polly could "travel, drive, work at least part time, attend his children's events, do chores, mow the yard, and take the dog out." R. 20. Substantial evidence supports these findings, including the Function Report where Polly indicated he took care of a dog, did laundry, mowed the lawn with a riding mower, washed

6

dishes, and attended church and his children's activities bi-monthly.[5] R. 259–61. Polly also reported to Dr. Hamilton that he took trips to Kentucky, Walt Disney World, and Virginia Beach in 2011, 2012, and 2014. R. 526, 546, 579.

Likewise, the ALJ gave Dr. Hamilton's January 2015 opinion that Polly met Listing 1.02 little weight, emphasizing that Dr. Hamilton "provided no explanation for his opinion." R. 21. Polly must do more than rely upon the opinion of his treating physician. Here Polly fails to meet his burden to explain how the medical evidence shows that he meets a Listing. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a Listing, he must show that it meets *all* of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

The ALJ explained both the criteria for meeting Listing 1.02 and why Polly did not meet those requirements. In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan, 493 U.S. at 530. A claimant is presumed to be disabled if his or her impairment meets or is medically equivalent to the criteria of an impairment set forth in the Listings. See 20 C.F.R. § 416.925. Under Listing 1.02, a social security claimant is disabled if she has "[m]ajor dysfunction of a joint" due to any cause.[6] 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02. In addition, the "major dysfunction of a joint" requires the involvement of one major weight-bearing joint (i.e. hip, knee, or ankle)

---

[5] Polly also testified during the hearing that, while his wife did most of the household chores, he did a "couple loads of laundry a day." R. 41.

[6] "Major dysfunction of a joint" is defined as "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s)," and "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." Listing of Impairments § 1.02.

7

resulting in an inability to walk effectively. Id. §1.02(A).[7] The ALJ noted that ineffective walking is "defined generally as having insufficient lower extremity functioning to permit ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." R. 21. The ALJ wrote:

> [Polly] does not require a walker, two crutches, or two canes. Moreover, his records indicate that he was able to ambulate well enough to perform chores, drive, take out the dog, and attend church and children's activities. In addition, at his most recent orthopedist visit, he did not require a gait aide and was able to walk at least one to four blocks.

Id. Thus, the ALJ concluded that "Dr. Hamilton's unsupported opinion that [Polly] met Listing 1.02 is given little weight." Id. Instead, the ALJ gave great weight to the opinion of state agency physician Thomas Phillips, M.D., who found Polly capable of performing a limited range of sedentary work. R. 21. The ALJ noted that Dr. Phillip's opinion is "consistent with [Polly's] improvement in knee range of motion, his ability to ambulate unassisted, his moderate subtalar arthritis, his stable hardware, his ability to perform work such as laying tile and making cabinets, and his decision to pursue only conservative treatment . . . ." R. 22.

Here, the ALJ considered the record, including Dr. Hamilton's May 2014 Physical Form and his January 2015 opinion that Polly met Listing 1.02, and determined that although Polly's comminuted, displaced interarticular calceneus fracture and right patellar fracture status post surgeries and subtalar arthritis were severe impairments, his impairments individually or combined did not meet Listing 1.02, or any other listing. The ALJ further concluded that Polly was capable of a limited range of sedentary work. R. 16, 21. The ALJ's job is to review the medical evidence of record, weigh the medical opinions, and determine an RFC that represents

---

[7] Listing 1.02(B) requires involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively. However, Polly does not argue that he has any limitations related to a major peripheral joint in each upper extremity limits, nor is there evidence of this in the Record.

Polly's functional capacity. The ultimate decision on whether Polly meets the statutory definition for disability is an administrative decision that is always reserved to the Commissioner. See Morgan v. Barnhart, 142 F. App'x 716, 721–722 (4th Cir. 2005) (finding legal conclusions such as "statements[s] by a medical source that [the claimant is] 'disabled' or 'unable to work" are opinions on issues reserved to the ALJ). Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision to give the opinions of Dr. Hamilton little weight.

## CONCLUSION

For the foregoing reasons, Polly's Motion for Summary Judgment is **DENIED** and the Commissioner's Motion for Summary Judgment is **GRANTED** and this case is **DISMISSED** from the court's docket.

Entered: March 14, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge